UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| IN RE:<br><br>AVI SCHWALB,<br><br>Debtor. | Case No. 25-12666-JGR<br><br>Chapter 7 |
| JOHN DOE AND JANE ROE,<br><br>Plaintiffs,<br><br>v.<br><br>AVI SCHWALB,<br><br>Defendant. | Adversary No. 25-01255-JGR |

**ORDER DENYING MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT**

Plaintiffs John Doe and Jane Roe ("Plaintiffs") filed an adversary proceeding against Debtor Avi Schwalb ("Defendant") for a non-dischargeable debt for willful and malicious injury on September 3, 2025 (Dkt. 1). Plaintiffs obtained a clerk's entry of default against Defendant on December 16 (Dkt. 31). Defendant submitted a motion to set aside the clerk's entry of default on December 30, 2025 (Dkt. 33) and Plaintiffs filed an opposition on January 13, 2026 (Dkt. 35).

Default judgments are not favored in the Tenth Circuit because public policy dictates trying civil cases on their merits. *Katzson Bros., Inc., v. E.P.A.,* 839 F.2d 1396, 1399 (10th Cir. 1988); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). This policy provides parties with their day in court, resolves disputes based upon the applicable facts and law, and promotes public confidence in the federal judiciary. However, "this judicial preference is counterbalanced by consideration of social goals, justice and expediency." *Gomes v. Williams,* 420 F.2d 1364, 1366, (10th Cir. 1970). Here, the Court must strike the balance between honoring clerk's entries of default when parties have previously failed to defend and trying cases on their merits to reach the just result.

In this case, the application of the Court's discretion and consideration of social goals, justice and expediency weighs heavily in favor of denying the motion to set aside the clerk's entry of default.

## BACKGROUND

### State Court Action

Defendant owned, directly or indirectly, numerous residential rental properties in the Denver metropolitan area. The Plaintiffs, who are immigrants, were tenants in one of the properties in Aurora, Colorado. They sued the Defendant, Nancy Dominguez and PHS Rents, LLC, in state court in January 2025, setting forth a horrific fact pattern claiming they were victimized by the Defendant, their landlord, and the subject of threats, intimidation, retaliation and unsafe and unsanitary housing conditions at the hands of the Defendant in one of his properties. They asserted state law causes of action for Violation of the Immigrant Tenant Protection Act, C.R.S. 38-12-1201, Retaliation, C.R.S. 38-12-509, Removal Without Process C.R.S. 38-12-510, Unfair Housing Practice C.R.S. 24-34-501, Breach of Covenant of Quiet Enjoyment and Declaratory and Injunctive Relief and demanded a jury trial. They obtained injunctive relief in state court.

A review of the complaint reflects that the Plaintiffs were residential tenants of an apartment in Aurora they leased from the Defendant. They are proceeding under pseudonyms for fear of retaliation from the Defendant. The apartment they rented was uninhabitable and the Defendant failed and refused to remediate the unhabitable conditions. Instead of remediating the uninhabitable conditions, the Defendant locked them out of the apartment to intimidate them and threatened them so they would not assert their rights as tenants. They complain they were evicted illegally with a fraudulent eviction notice, and the subject of violent entry and illegal threats.

### Bankruptcy Case

Before they could pursue their case by conducting discovery in advance of trial, the Defendant filed a Chapter 11 bankruptcy case in this District on May 2, 2025, Case No. 26-12666-JGR (the "Bankruptcy Case"). The bankruptcy case was filed on the eve of a state court trial. The Chapter 11 reorganization case was converted to a Chapter 7 liquidation case on October 30, 2025, over the Defendant's objection.

The Defendant was embroiled in significant criminal and civil litigation on the date of the bankruptcy filing. On March 20, 2025, a statewide grand jury indicted him on 51 counts of theft for perpetrating a fraudulent home remodeling scheme in which Schwalb and others received customer deposits for home remodeling, failed to complete work, left homes uninhabitable, and misused the deposits for personal gain. The Court takes judicial notice that a jury returned a guilty verdict against the Defendant on 47 counts on February 19, 2026.

The Defendant was also faced with approximately twenty lawsuits and foreclosure actions from either homeowners who were pursuing tort and contract claims or lenders to the rental properties who claimed the Defendant collected rents from such properties and failed to pay the mortgages.

He filed the Bankruptcy Case to obtain an automatic stay of the numerous civil actions pending against him in various state courts including the action brought by the Plaintiffs. On May 29, 2025, he filed Adversary Proceeding 25-01171-JGR, in which he sought an injunction extending the automatic stay he obtained by filing a personal bankruptcy to protect over thirteen entities he owned and controlled. He claimed unusual circumstances existed to justify extension of the stay. In defense of a motion for relief from stay filed by the Davidson's, homeowners who sought to continue their state court action, he claimed the bankruptcy case was filed so the bankruptcy court could act as a centralized forum to resolve all of the civil litigation in the claims objection process, although he neither offered a timeframe for claims objections nor ever filed a single claims objection.

His strategy failed when this Court: (i) let the Defendant know it would not extend the automatic stay since there were no unusual circumstances present to warrant an unprecedented extension of the stay to thirteen separate entities, and (ii) granted relief from stay to various state court plaintiffs to allow them to pursue jury trials on their state law tort and contract claims against the Defendant and non-debtor third parties in state court, , some of which were pending for several years.

The Defendant moved to dismiss the Bankruptcy Case on September 15, 2025, stating there was no longer a purpose for the chapter 11 case since the Court rejected his bankruptcy litigation strategy to stay all civil litigation and wait for a plan of reorganization. The Court notes no plan of reorganization was ever filed.

Objections to dismissal were filed by multiple creditors and the Official Committee of Unsecured Creditors (the "UCC"). The UCC filed a detailed 13-page objection on October 6, 2025 (Bankruptcy Case Dkt. 230), in which it claimed that conversion of the bankruptcy case from chapter 11 to chapter 7 rather than dismissal was appropriate and in the best interest of creditors because: (i) the Defendant was the subject of a criminal indictment for theft, money laundering and other charges relating to his construction business, (ii) he transferred his interest in 27 limited liability companies to another limited liability he owned on the day before the bankruptcy was filed, (iii) the financial reports filed in the bankruptcy case failed to disclose and/or identify significant disbursements, (iv) the transactions in the bank statements did not match the transactions reported in the monthly operating reports; and (v) there could be substantial equity in the real properties. In sum, it argued the appointment of a chapter 7 trustee to administer assets was in the best interest of creditors.

The Court conducted a hearing on the matter on October 29, 2025, at which the Court received offers of proof and exhibits. At the hearing, the Defendant declined the Court's invitation for an evidentiary hearing because he stated he would assert the Fifth Amendment Privilege and refuse to testify. Thus, after reviewing the file, the offers of proof, the exhibits and the applicable law, on October 30, 2025, the Court converted the chapter 11 case to a case under chapter 7 via a multiple page oral ruling. The Court ruled orally due to the time constraints necessitated by the request of the UCC for the

immediate appointment of a chapter 7 trustee to take possession and control of the real properties, and the rent from such properties.

The Defendant appealed the conversion order to the United States District Court for the District of Colorado (25-CV-3624). He sought a stay pending appeal from this Court, which was denied on December 2, 2025 (Bankruptcy Case Dkt. 326). The United States District Court for the District of Colorado also denied the Defendant's motion for a stay pending appeal. The appeal is pending and has been fully briefed.

### Adversary Proceeding

Plaintiffs initiated this adversary proceeding against Defendant for a determination their debts are nondischargeable under 11 U.S.C. § 523(a)(6) on September 3, 2025 (Dkt. 1). They served the summons and complaint on September 9, 2025 (Dkt. 9).

The Court granted the Defendant's motion for extension of time to answer on October 7, 2025 (Dkt. 11), extending the answer period to October 18, 2025. Rather than answering the complaint, the Defendant filed a Motion to Stay the progression of the adversary proceeding on October 17, 2025 (Dkt. 13), seeking an indefinite stay of the adversary proceeding until the state court adjudicated the state court claims. The Plaintiffs objected and the Court denied the Motion to Stay on November 10, 2025, ordering the Defendant to answer or otherwise respond by November 24, 2025 (Dkt. 23). While the Defendant claimed he filed bankruptcy to obtain a centralized forum for the resolution of the civil litigation pending in state court against him, in this action he requested the opposite, that this adversary proceeding be stayed and the matter be resolved in state court; another tactic to delay the litigation.

Because no answer or other responsive pleading was filed, the Court entered an Order to Show Cause on December 11, 2025 (Dkt. 27), requiring the Plaintiffs to advance the adversary proceeding.

The Plaintiffs filed and properly served a motion for clerk's entry of default on December 12, 2025 (Dkt. 28). The Court entered a clerk's entry of default on December 16, 2025 (Dkt. 31). Before the Plaintiffs could file a motion for default judgment, Defendant filed his motion to set aside clerk's entry of default on December 30, 2025 (Dkt. 33) and an answer (Dkt. 34) and the Plaintiffs objected on January 13, 2026 (Dkt. 35).

### ANALYSIS

The Court may vacate a clerk's entry of default for good cause under Fed.R.Civ.P. 55(c), made applicable herein by Fed.R.Bankr.P. 7055. The factors examined by the courts in evaluating the good cause standard are: (1) whether the default was willful, (2) whether setting it aside would prejudice the other party, and (3) whether there is a meritorious defense. *Pinson v. Equifax Credit Info. Serv., Inc., et al.,* 316 Fed Appx. 744, 750 (10th Cir. 2009). The burden is on the moving party to demonstrate good cause. *See* 10 *Moore's Federal Practice – Civil,* § 55.70. While the good cause standard is to

4

be construed liberally, the court has discretion to consider each of the above factors, not consider any one of the factors, or consider other factors. *Guttman v. Silverberg,* 167 Fed. Appx. 1, 4 (10th Cir. 2005).

This Court previously granted a motion to vacate a default judgment to allow an adversary proceeding for fraud to be resolved on the merits in the case of *In re Milos*, United States Bankruptcy Court for the District of Colorado, Case No. 17-01138-JGR, August 28, 2017 (Doc. 18). In *Milos*, the defendants moved to vacate the clerk's entry of default within one month of its entry by the Court after they received a motion for default judgment within two weeks after the clerk's entry of default. The Court found the default was not willful, there would be no prejudice in setting it aside, and, importantly, that the defendants raised a meritorious defense.

The first factor is whether the default was willful. While Defendant admits the default was willful, he states he did not act in bad faith and the default was caused, "from an inadvertent filing error in which a responsive pleading was filed in the wrong case." That statement is untrue. Plaintiffs urge that culpable conduct sufficient to deny the motion is evidenced by the multiple extensions to respond and the misrepresentation to this Court about an inadvertent filing.

The motion for entry of clerk's default was filed after the Defendant actively participated in the adversary proceeding, after the Court entered a separate order establishing a date for the filing of an Answer, and after the Court entered an Order to Show Cause directing the filing of the Motion for Entry of Clerk's Default. The Court finds the default was willful and this factor weighs against vacating the Clerk's entry of default. *See Security Nat'l Mortg. Co. v. Head,* 2014 WL 4627483 at *2 (D. Colo. 2014)(The defendants' failure to timely respond was culpable because defendants "received actual . . . notice of the filing of the action and failed to answer.")[1].

The second factor is prejudice to the adverse party if the court vacates the entry of default. There will always be prejudice to an adverse party if a court vacates a clerk's entry of default. The cases hold that there must be identifiable prejudice to the plaintiff's ability to pursue its claim in a concrete way such as loss of evidence, increased difficulties of collection, and/or fraud or collusion. *Indigo Am., Inc., v. Big Impressions,* 597 F.3d 1, 4 (1st Cir. 2010); *Security Nat'l* at *3.

The Defendant states this adversary proceeding is in the initial stages, discovery has not been completed, and the delay is minimal. Plaintiffs argue that they have been prejudiced by the Defendant's delay tactics and submit his chapter 11 filing delayed their state court action causing an, "ongoing and acute" delay in the adversary proceeding. The facts which give rise to their claim occurred in late 2024. The evidence is fact-intensive. Since their evidence is testimonial involving several witnesses, further delay significantly inhibits their ability to present their case. The Court envisions continuing delay in the adversary proceeding if the default is vacated based upon the Defendant's

---

[1] In *Security Nat'l*, the Clerk's Entry of Default was vacated, finding "even if defendant's failure to timely respond was culpable, the other factors weigh in favor of granting the motion to set aside." *Id.* at *3.

5

performance in the Bankruptcy Case of filing incomplete and late bankruptcy schedules, the appeal of the conversation order to the District Court, the requests to stay the conversion order, the request to stay this adversary proceeding so the matter can be returned to and adjudicated in state court, and the failure to meet two answer deadlines. This factor weighs against vacating the clerk's entry of default.

The third factor is whether Defendant has a meritorious defense to the claims because if there is no meritorious defense, it makes little sense to set aside the entry of default. *Indigo,* 597 F.3d at 4. The Court must evaluate the facts set forth in the motion to set aside, and opposition, to determine if such facts, if they are true, would constitute a defense. *Security Nat'l* at *3. The movants do not have to establish likelihood of success on the merits. *Id.*

The Tenth Circuit has held that bald allegations without sufficient factual support do not constitute a meritorious defense. *Gomes,* 420 F.2d at 1366.

There are no facts asserted in the motion to vacate or the answer which constitute a meritorious defense. The Defendant claims, in a single sentence, without elaboration, that he has a meritorious defense because the Plaintiffs have the burden to prove willful and malicious intent. The Plaintiffs respond that Defendant has failed to meet his burden of identifying detailed facts to support a meritorious defense. The Complaint outlines the facts in precise detail in 70 paragraphs. The conduct detailed in the complaint is uncivilized and reprehensible. When combined with the criminal conviction and flood of homeowner civil actions and secured lender foreclosure actions, this factor weighs against vacating the clerk's entry of default. The Defendant's answer contains general denials and does not present even a scintilla of a factual basis of a defense.

The Tenth Circuit has instructed the trial courts that, "[u]nlike the simple notice pleading required in original actions, the rule relating to relief from default judgments contemplates more than mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense. The rule requires a sufficient elaboration of the facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious." *In re Stone,* 588 F.2d 1316, 1319 (10th Cir. 1978)(internal citations omitted).

Here, the Court gives the most weight to the lack of a meritorious defense. If there is no meritorious defense, there is no reason to proceed. Therefore, the Court finds the Defendant has not alleged sufficient facts to support a credible meritorious defense and this factor weighs heavily against vacating the clerk's entry of default.

## CONCLUSION

This is an unusual case. The claims are for outrageous conduct. It is not enough to simply generally deny the claims to vacate the default. The balance of the equities favors exercising judicial discretion and denying the motion to vacate the clerk's entry of default for the reasons set forth above.

Therefore, Defendant's Motion to Set Aside Clerk's Entry of Default (Dkt. 33) is DENIED, and Plaintiff is ordered to file a motion for default judgment on or before March 20, 2026.

DATED: March 6, 2026.

FOR THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge